WILFRED COLEMAN, as administrator of estate of Ronald D. Coleman, deceased, appellee, v. BROWER CONSTRUCTION COMPANY, appellant.

No. 50758.

(Reported in 119 N.W.2d 256)

JANUARY 15, 1963.

Burnquist, Burnquist & Kersten, of Fort Dodge, for appellant.

Linnan, Lynch & Straub, of Algona, and Harlyn A. Stoebe, of Humboldt, for appellee.

GARFIELD, C. J.—The question presented is whether the trial court abused its discretion in ordering a second trial after jury verdict for defendant in this action to recover for death of plaintiff's decedent from injuries received when his automobile struck the rear of defendant's unlighted road construction roller on a primary highway after sunset. We affirm the trial court.

The accident occurred September 1, 1960, about 7:15 p.m. on U. S. Highway 169 about a mile south of the city of Humboldt. Defendant, Brower Construction Company, had a contract for resurfacing with asphalt seven to eight miles of this highway from Humboldt south to "the Badger corner", west of the town of Badger. Work had commenced about July 15 at the north end of the project and proceeded south. Resurfacing of the pavement to a width of 24 feet was completed the day of the accident. Defendant's employee, Orrin Kelly, was directed by his superior

to drive the 11-ton roller from near the south end of the project north to a farm driveway from 150 to 300 feet north of the scene of the accident and leave it there over night. It was to be used the next day in Humboldt.

Plaintiff's decedent, Ronald Coleman, age 20, was defendant's employee. His home was in Livermore, about 10 miles north of Humboldt. He commuted daily between his home and work on the project either in his own automobile, a 1951 Chevrolet with a rebuilt motor, or in a car of a coworker on the job. On September 1 decedent finished work at 7 p.m., received his pay check and started for home alone in his car. At a point Kelly testifies was 250 feet south of the driveway, where he intended to park the roller, Coleman collided with its rear. He died within a few minutes from the injuries received.

Sunset on September 1 was at 6:52. All the evidence is that the accident occurred after this hour but somewhat less than 30 minutes thereafter. It is undisputed there was no light upon the roller as required by sections 321.399, 321.400, Codes, 1958, 1962.

These sections provide: "No * * * road machinery operated by motor fuel * * * shall be used upon any public highway * * * which is open to traffic by the public, unless there is carried at least two red danger signal lanterns or lights * * *." (321.399)

"It shall be the duty of each person charged with the operation of any * * * road machinery * * * to place and maintain in a lighted condition at least one signal light upon the front and one upon the rear of any such * * * machinery from the time the sun sets until the time the sun rises the following day, whenever the same is being operated or stationed upon any public highway open to traffic by the public." (321.400)

These two statutes form the basis for the two charges of negligence against defendant which were submitted to the jury.

Rolling width of the roller was 54 inches. Overall width was 67 inches. It was moving five to six miles an hour. Shortly before decedent collided with the rear of the roller an automobile and then a pickup truck, both lighted, came from the north. Driver of the truck testifies he was about 50 yards south of the roller when he met decedent's car. Both these southbound motor-

ists say it was hard to see the roller. One says he first discovered it when it was 50 feet ahead of him. The other says he did not recognize what it was until he was about 25 yards from it. There is a good deal of testimony to the same general effect.

A passenger in a car proceeding north a very short time before the accident says he remarked to the driver of his car, "I will be surprised if someone doesn't hit this", referring to the roller. A farmer living near the scene of the crash saw the roller just before the accident and expressed wonder to his wife that the roller was on the road at that hour because it was getting too dark. Kelly's superior testifies he told Kelly when the roller was 1000 to 1500 feet south of the scene of the accident it was time he should be getting off the road although he suggested the place to park it which was 300 feet north of the place of collision.

Kelly says he did not see decedent or his automobile before the collision. His machine made "quite a bit of noise." The southbound truck driver estimates decedent's speed when about 50 yards south of the roller at around 55 or 60 miles an hour and says decedent's lights were on. The same witness testifies he looked in his rearview mirror two or three seconds later and saw decedent's car start to skid, saw the impact and heard the crash.

I.  The trial court left to the jury the question whether plaintiff was entitled to the benefit of the no-eyewitness rule on the issue of decedent's freedom from contributory negligence. We think this was proper. The truck driver comes the nearest to being an obtainable eyewitness. However, his observations were so fragmentary the jury could properly find he was not such, within the meaning of the rule, or that he did not observe decedent during the material moments preceding the collision. See Hoffman v. Monroe Welding Supply Co., 253 Iowa 591, 594, 595, 113 N.W.2d 237, 239, 240; Vandello v. Allied Gas and Chemical Co., 252 Iowa 1313, 110 N.W.2d 232; citations in these opinions; Article by Bruce M. Snell, Jr., 43 Iowa Law Review 57, 70.

It was also for the jury to say whether the facts and circumstances in evidence negative the inference of due care that might otherwise be drawn from the absence of obtainable eye-

witnesses. See Vandello case, supra; Larson v. Johnson, 253 Iowa 1232, 1236, 115 N.W.2d 849, 851, 852, and citations.

II. The trial court submitted three special interrogatories to the jury requiring it to find whether decedent: (1) traveled at such speed that he could have stopped within the assured clear distance ahead; (2) maintained a proper lookout; and (3) had his car under such control that he could have stopped with a reasonable degree of celerity. The jury answered "no" to one and three and "yes" to two.

Plaintiff's motion for new trial was largely based on the fact one of the jurors was convicted of a felony in 1932, had not been pardoned, one of the plaintiff's attorneys was county attorney of Humboldt County at the time of the trial of the present action and the juror did not truthfully answer one or more questions put to him on voir dire examination. (As to noneligibility for jury service of one "convicted of any infamous crime" see section 609.2(1); Iowa Constitution, Article II, section 5.) Although the attorney swore he did not know of the juror's conviction until after the jury was empaneled and sworn, the clerk of court made affidavit to the contrary.

The trial court overruled the ground of plaintiff's motion which asserted denial of a fair trial because of the presence of this juror on the list. The reason stated for this ruling is that plaintiff waived any right to new trial upon this ground by not making timely objection before the case was submitted to the jury.

III. The trial court granted the new trial under its inherent power and under rule 244(f), Rules of Civil Procedure. It expressed the opinion the verdict and negative answers to special interrogatories above referred to were not sustained by sufficient evidence and were contrary to law and the evidence; that the jury did not understand or follow the court's instructions; substantial justice has not been done by the verdict and said answers; and the jury failed to respond truly to the merits of the controversy.

The court pointed out its instruction on "assured clear distance ahead", to which no objection was taken, stated it meant the distance at which discernible objects reasonably expected or

anticipated to be upon the highway may be observed and that a motorist has a right to assume other users of the highway will observe the law until he knows, or in the exercise of reasonable care should have known, otherwise. The court thought the jury failed to interpret or follow this instruction as well as instructions on sudden emergency and the no-eyewitness rule to which defendant did object. The court also had difficulty in reconciling the negative answers to the interrogatories with the affirmative one, with the evidence and the affirmative answer with the general verdict.

■ IV. Rule 244(f), above referred to, gives as a ground for new trial, if it materially affected substantial rights of the aggrieved party, the fact the verdict is not sustained by sufficient evidence or is contrary to law. This supersedes a statute to the same effect enacted over 100 years ago. Section 3112, subparagraph 6, Revision of 1860; section 11550, subparagraph 6, Code, 1939. Apparently we have never held this rule or prior statute either enlarges or modifies the common-law inherent power of the court to grant a new trial in the interest of justice. Burke v. Reiter, 241 Iowa 807, 813, 814, 42 N.W.2d 907, 911, and citations.

V. Much of defendant's able brief and argument points out the case was properly one for the jury and plaintiff was not entitled to a directed verdict. From this premise it is argued there is no sound basis for the order granting a second trial.

■ It may be admitted the case was properly for the jury and plaintiff was not entitled to a directed verdict. However, we have frequently held this does not prevent trial courts from exercising their inherent power to grant another trial in the interest of justice. Burke v. Reiter, supra; Hall v. West Des Moines, 245 Iowa 458, 462, 463, 62 N.W.2d 734, 736, 737; In re Estate of Hollis, 235 Iowa 753, 761, 16 N.W.2d 599, 603; Porter v. Madrid State Bank, 155 Iowa 617, 619, 136 N.W. 666. Nor is it necessary reversible error was committed upon the trial. If such were the rule, the inherent power of the court to correct a failure of justice would be meaningless. Hall case, supra; Nicholson v. City of Des Moines, 246 Iowa 318, 330, 67 N.W.2d 533, 540.

■ We have repeatedly held trial courts should grant a new

trial when they feel the verdict fails to administer substantial justice or it appears the jury has not responded truly to the real merits of the controversy. White v. Walstrom, 254 Iowa 646, 652, 118 N.W.2d 578, 581, 582, and citations; Haase v. Hub-Co Credit Union, 253 Iowa 1202, 1204, 115 N.W.2d 880, 882; Whiting v. Cochran, 241 Iowa 590, 592, 593, 41 N.W.2d 666, 667, 668.

▮ Trial courts have a broad but not unlimited discretion in determining whether a verdict effectuates substantial justice. We are slower to interfere with the grant of a new trial than with its denial (rule 344(f), subparagraphs 3, 4, Rules of Civil Procedure).

▮ Many of our decisions point out that trial courts have greater discretion to order a new trial in the interest of justice than does this court. We interfere reluctantly and infrequently with such an order and only upon a clear showing of abuse of discretion. Steensland v. Iowa-Illinois Gas & Elec. Co., 242 Iowa 534, 536, 537, 47 N.W.2d 162, 163, and citations; Hall v. West Des Moines, supra, 245 Iowa 458, 469, 470, 62 N.W.2d 734, 740; Skinner v. Polk County, 250 Iowa 1264, 1268, 98 N.W.2d 749, 752.

"The fact that the trial court has had the witnesses before it, heard their testimony, had opportunity to observe the effect of the evidence and the general conduct of the trial, places the trial court in a much better position to pass upon * * * the right of a new trial than this court can be * * * upon appeal." Morton v. Equitable Life Ins. Co., 218 Iowa 846, 849, 850, 254 N.W. 325, 326, 96 A. L. R. 315, 318.

▮ We should not disturb the order appealed from unless we can say there was no reasonable ground for the trial court to believe the jury reached an unjust result which may be obviated upon a second trial. Porter v. Madrid State Bank, supra, 155 Iowa 617, 620, 136 N.W. 666, 667, and citations. See also Schneider v. Keokuk Gas Service Co., 250 Iowa 37, 42, 43, 92 N.W.2d 439, 442, 443. "It is not for us to say whether we would have seen the matter in the same light." Hall v. West Des Moines, supra, 245 Iowa 458, 462, 62 N.W.2d 734, 736.

We are not called upon to decide whether judgment on the

verdict, had one been entered, would have been reversed on plaintiff's appeal or whether reversible error was committed upon the trial. Schneider case, supra.

VI. We are not persuaded from a study of this record that the trial court's order shows a clear abuse of the broad discretion lodged in it. Defendant's negligence in the respects charged by plaintiff, violation of Code sections 321.399, 321.400, supra, clearly appears beyond dispute. The court might properly have so instructed the jury rather than submit to it the question whether defendant was negligent in these respects. Loving v. Atlantic Southern R. Co., 184 Iowa 435, 440, 168 N.W. 910; Rich v. Herny, 222 Iowa 465, 471, 472, 269 N.W. 489; 88 C. J. S., Trial, section 291; 53 Am. Jur., Trial, section 598.

That no objection on this ground was made to the instruction given does not prevent consideration of it in determining whether the order appealed from was a clear abuse of discretion. Schneider v. Keokuk Gas Service Co., supra, 250 Iowa 37, 43, 92 N.W.2d 439, 443; Burke v. Reiter, supra, 241 Iowa 807, 814, 815, 42 N.W.2d 907, 911, 912. By the same token, presence on the jury of the convicted man need not be overlooked on the question of the exercise of the trial court's discretion.

It is perhaps true, as defendant argues, the jury's affirmative answer to the second special interrogatory previously referred to does not necessarily conflict with its negative answers to the first and third interrogatories. That is, it would be possible for decedent to have maintained a proper lookout but violate the law regarding assured clear distance and having his car under control. Nevertheless a motorist's duties in these three respects are at least somewhat related. Several recent decisions in effect point out the duty to maintain a proper lookout is rather broad.

"Proper lookout means more than seeing the object. It implies being watchful of the movements of the driver's own vehicle as well as the movements of the thing seen or seeable. It involves the care, watchfulness and attention of the ordinarily prudent person under the circumstances [citations]." Mathews v. Beyer, 254 Iowa 52, 57, 58, 116 N.W.2d 477, 480.

The jury's special finding decedent maintained a proper

lookout contributed to the trial court's difficulty in accounting for the negative findings on the other two questions and the general verdict. We cannot say it clearly appears this difficulty was purely arbitrary or without reasonable basis. Nor can we say there is no such basis for the court's feeling the jury's finding decedent was negligent in the two respects referred to lacks sufficient support in the evidence. In view of the likelihood of a retrial we feel we should refrain from further comment on the evidence.

Precedents which support our decision include Brunssen v. Parker, 227 Iowa 1364, 291 N.W. 535; In re Estate of Goretska, 234 Iowa 1080, 13 N.W.2d 432; Whiting v. Cochran, supra, 241 Iowa 590, 41 N.W.2d 666; Burke v. Reiter, supra, 241 Iowa 807, 42 N.W.2d 907; Hall v. West Des Moines, supra, 245 Iowa 458, 62 N.W.2d 734; Schneider v. Keokuk Gas Service Co., supra, 250 Iowa 37, 42, 43, 92 N.W.2d 439, 442, 443; Haase v. Hub-Co Credit Union, supra, 253 Iowa 1202, 1204, 1205, 115 N.W.2d 880, 882. See also In re Estate of Hollis, supra, 235 Iowa 753, 759-762, 16 N.W.2d 599, 602, 603; White v. Walstrom, supra, 254 Iowa 646, 118 N.W.2d 578.

Defendant cites four precedents in support of its contention it was an abuse of discretion to order a new trial. We have just cited two of them, In re Estate of Goretska and Burke v. Reiter. Each decision affirms the grant of a new trial on grounds similar to those that support the present order. They sustain plaintiff's position rather than defendant's.

The other two cases defendant cites on this point are Jacobsen v. Gamber, 249 Iowa 99, 86 N.W.2d 147, and In re Estate of Springer, 252 Iowa 1220, 110 N.W.2d 380. Neither is fairly analogous to the present appeal. Jacobsen v. Gamber more nearly resembles the cases in which the order for a new trial is based on an erroneous determination of a law question. Such cases present primarily the law question involved rather than the exercise of discretion. In re Estate of Murray, 238 Iowa 112, 114, 26 N.W.2d 58, 60, and citation.

In re Estate of Springer, supra, holds the trial court erroneously entered judgment for proponent notwithstanding a jury verdict for contestants in a will contest. The precedent

734

does not involve the inherent power of the court to grant a new trial in the interest of justice.—Affirmed.

All JUSTICES concur except STUART, J., who takes no part.